IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TERESA R. DE LA ROSA, )
 )
        Plaintiff, )
 )
 ) Case No. CIV-19-263-RAW-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Teresa R. De La Rosa (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 39 years old at the time of the most recent decision. She has a limited education and past relevant work as a poultry eviscerator, fast food worker, laminator, and molding-machine tender. Claimant alleges an inability to work beginning on May 9, 2011, due to limitations resulting from bilateral carpal tunnel syndrome, post-traumatic stress disorder ("PTSD"), right foot pain, diabetes, and high blood pressure.

### Procedural History

On October 20, 2014, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act.

On October 31, 2014, she protectively filed an application for a period of disability and disability insurance benefits pursuant to Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her applications were denied initially and upon reconsideration. ALJ James Bentley entered an unfavorable decision on April 13, 2016. Claimant appealed the matter, and the case was reversed and remanded by the district court on September 25, 2018, on the recommendation of United States Magistrate Judge Steven P. Shreder. On October 30, 2018, the Appeals Council remanded the case pursuant to the district court's order.

On April 25, 2019, ALJ Bentley conducted a hearing from McAlester, Oklahoma, at which Claimant testified. On June 13, 2019, he entered an unfavorable decision. For purposes of appeal, the ALJ's decision represents the Commissioner's final decision. 20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC determination (with various subparts), and (2)

4

finding she had the ability to perform the jobs identified by the ALJ at step five of the sequential analysis.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of mild degenerative disc disease of the cervical and lumbar spine, mild left acromioclavicular joint arthrosis and mild subscapularis tendinosis, bilateral carpal tunnel syndrome, status post remote right carpal tunnel release and right volar ganglion excision, insulin-dependent diabetes mellitus type II with neuropathy, hypertension, obesity, schizoaffective disorder, bipolar II disorder, generalized anxiety disorder, trichotillomania, and PTSD. (Tr. 766). He determined Claimant could perform light work with additional limitations. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could not climb ladders, ropes, or scaffolding. Claimant could frequently, but not constantly, handle and finger bilaterally and reach overhead with her left upper extremity. Because of neuropathy, she was to avoid concentrated exposure to vibrations and would be unable to operate machinery requiring frequent use of foot controls. Claimant was to avoid concentrated exposure to extreme heat and sunlight, unprotected heights, and dangerous moving machinery. She could understand, remember, and apply simple, routine instructions and concentrate and persist for extended periods in order to complete simple,

routine work tasks with routine, nonconfrontational supervision. She could maintain superficial work relationships with others, but she needed to avoid contact with the general public. Claimant was capable of adapting to a routine work setting where changes were infrequent and introduced gradually. (Tr. 772).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of marker, routing clerk, and inspector and hand packager, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 786). As a result, the ALJ concluded Claimant was not under a disability from April 10, 2013, through the date of the decision. (Tr. 786-87).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence for several reasons. She first argues the record evidence demonstrates she cannot perform the prolonged standing and walking required for light work, she cannot frequently grasp and finger bilaterally and reach overhead with her left arm, and the ALJ failed to include mental limitations in the RFC that accounted for all her mental conditions.

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). "When the ALJ does not need to

6

reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Moreover, a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ specifically discussed the evidence of Claimant's reported problems with prolonged standing and walking, her diminished sensation in her feet, and her reported difficulties with her hands. For example, in discussing a medical source statement completed by Lena Burns, ARNP, the ALJ noted Claimant's limitations in standing and walking lacked consistency with the medical evidence (citing evidence) and Claimant's testimony that she could walk a mile on the track and exercised 30 minutes daily. (Tr. 778). Moreover, the ALJ accounted for Claimant's neuropathy resulting in diminished sensation in her feet by including limitations in the RFC that Claimant would need to avoid concentrated exposure to vibrations and could not operate machinery requiring frequent use of foot controls. (Tr. 772, 780). The ALJ also determined the limitations for handling, fingering, and reaching included in the RFC were supported by the record, including benign examination findings for deficits in sensation, grip strength, and finger ranges of motion, and deficits in gross or fine manipulation. (Tr. 777). He further discussed right

shoulder diagnostic images that were normal (Tr. 780), a left upper extremity MRI showing "mild acromioclavicular joint arthritis and some evidence of subscapularis tendinosis, but no frank tear or obvious impingement," and examination findings of the left shoulder. (Tr. 781).

The ALJ also adequately addressed Claimant's mental impairments in the RFC assessment. He discussed the medical evidence and treatment records in detail, and he specifically explained why he included certain mental limitations in the RFC. (Tr. 781-785).

The ALJ determined Claimant had the RFC to perform light work, including standing or walking for six hours in an eight-hour workday and non-exertional limitations of frequently, but not constantly, reaching overhead with her left upper extremity and handling and fingering bilaterally. Regarding her mental impairments, the ALJ limited Claimant to understanding, remembering, and applying simple, routine instructions and determined she could concentrate and persist for extended periods in order to complete simple, routine work tasks with routine, nonconfrontational supervision. He found she could maintain superficial work relationships with others, but she would need to avoid contact with the general public. Claimant could adapt to a routine work setting with changes that were infrequent and introduced gradually. (Tr. 772). In reaching the RFC regarding

these limitations, the ALJ discussed Claimant's testimony (Tr. 772-73) and the evidence of her testing, treatment, and opinions from her treatment providers in detail in the decision. (Tr. 773-85). This Court finds no error in the ALJ's consideration of this evidence in the RFC assessment.

Claimant also asserts the ALJ failed to give proper deference to the medical opinions of Lena Burns, ARNP, and Parin Shah, M.D. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479

F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ discussed Ms. Burn's treatment of Claimant and the limitations she included on medical source statements. He pointed out the differences between the two medical source statements (Tr. 775-76), and he provided numerous reasons in the decision for giving Ms. Burn's opinions "diminished weight." The ALJ considered the longitudinal treating relationship Ms. Burns had with Claimant, but he noted she was not considered an acceptable medical source at the time Claimant filed her applications. (Tr. 776). He noted numerous inconsistencies between Ms. Burn's opinions and the medical evidence in the record. The ALJ further referenced numerous inconsistencies between the limitations determined by Ms. Burns and her own treating notes and internal inconsistencies in her opinions. (Tr. 777-80).

The ALJ also discussed the medical source statement completed by Dr. Shah, regarding Claimant's mental functioning. He declined to assign "controlling weight" to Dr. Shah's opinion, finding "it [was] not well-supported by medically acceptable clinical and medical diagnostic techniques and tests, and [was] also inconsistent with other substantial evidence in the file." The ALJ then provided several reasons for assigning "little weight" to Dr. Shah's opinions. He referenced inconsistencies between Dr. Shah's limitations and his mental status examination findings in his

10

treatment notes. He noted specific inconsistencies between Dr. Shah's opinions and Claimant's reports to other medical providers regarding the efficacy of her medications and the degree to which she was limited. The ALJ further relied upon inconsistencies between Dr. Shah's limitations and objective mental status examination findings in other parts of the medical record. (Tr. 782-83).

The ALJ discussed both medical opinions in detail in the decision. He provided good, specific reasons for the weight assigned to the opinions, and it is clear to this Court the weight assigned to the opinions and the reasons for that weight. This Court finds no error in the ALJ's consideration of the medical opinions of Ms. Burns and Dr. Shah.

Claimant next argues that it was improper for the ALJ to give "substantial weight" to the opinions of the state agency medical consultants, as they did not examine Claimant and did not consider all the medical evidence in the record. However, the ALJ assigned "significant, but not great weight" to the opinions, only agreeing with them to the extent that Claimant could perform light work, and then explaining in the decision the evidence which supported the inclusion of further non-exertional limitations in the RFC, which included references to more recent medical evidence. (Tr. 780-81). This Court finds no error regarding the ALJ's consideration of the state agency medical consultant's opinions.

11

Claimant further argues the ALJ's RFC determination was improper because he failed to properly evaluate her subjective complaints. Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ summarized Claimant's testimony and concluded her statements were "lacking in consistency with the diagnostic studies, objective examination findings, and with the claimant's own reports to treatment providers." Tr. 772-73). He thoroughly discussed the various inconsistencies in the medical evidence and the lack of support for Claimant's subjective complaints. (Tr.

12

773-85). This Court finds no error in the ALJ's analysis of Claimant's subjective complaints.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. This Court finds no error in the RFC determination.

### Step-Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's

limitations in the RFC. This Court has determined that the ALJ's consideration of Claimant's impairments was appropriate and the limitations imposed in the RFC were supported by substantial evidence. The ALJ's questioning of the VE accurately reflected his properly determined RFC.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of September, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE